*491 SRINIVASAN, Circuit Judge,
concurring in part and dissenting in part:
The underlying question in this case is whether the union, in its collective bargaining agreement with Verizon, waived the statutorily protected right of employees to engage in the conduct at issue: to leave pro-union signs displayed in the window of their cars in a company parking lot while at work. The relevant provision of the collective bargaining agreement waived the employees’ right to engage in “picketing.” An arbitration panel, in a divided decision, found that the unattended display of pro-union signs in parked cars while at work constituted “picketing.” A dissenting arbitrator strongly disagreed. The Board overturned the arbitration majority’s decision, and we now assess whether the Board acted permissibly in doing so.
I concur fully in the court’s explanation of the legal standards under which the Board reviews an arbitration decision’s interpretation of a collective bargaining agreement. As the court sets out, one situation in which the Board may set aside an arbitration decision is if an arbitrator reaches a “palpably wrong” conclusion that the agreement waives employees’ statutory right to engage in the conduct at issue. Ante, at 487-88. The “palpably wrong” standard is self-evidently a deferential one. But if the Board, applying that deferential standard, concludes that an arbitrator’s interpretation is palpably wrong, we in turn apply a deferential standard in reviewing the Board’s decision. As the court explains, we overturn the Board’s decision only if it is an abuse of discretion — that is, only if it is unreasonable. Ante, at 488.
My sole (and narrow) disagreement with the court concerns the application of that deferential standard in the specific circumstances of this case. In my respectful view, the Board’s decision was not unreasonable in setting aside the arbitration decision.
The arbitration majority determined that, when Verizon employees left unattended signs in the windows of their cars in company parking lots while they went about their workday, the employees were engaged in “picketing.” According to the arbitration majority, “placing signs in cars” amounts to “picketing” because it “communicates a message.” J.A. 305. The Board could reasonably conclude otherwise. As the Supreme Court has explained, although written communications “may convey the same information” as workers “patrolling a picket line,” the “loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word.” Hughes v. Superior Court, 339 U.S. 460, 465, 70 S.Ct. 718, 94 L.Ed. 985 (1950). Picketing thus is “qualitatively different from other modes of communication.” Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council, 485 U.S. 568, 580, 108 S.Ct. 1392, *492 99 L.Ed.2d 645 (1987) (internal quotation marks and quotation omitted).
The Board, for that reason, could find it wrong to deem the unattended display of signs in parked ears to be “picketing.” But could the Board find it palpably wrong to do so? That is by definition a closer question. I think that, under our deferential standard of review, it was at least reasonable for the Board to find the arbitration majority’s interpretation of “picketing” to be palpably wrong. In other words, it was at least reasonable for the Board to find the dissenting arbitrator to be palpably correct.
The Board has long held that a “necessary condition! ] of ‘picketing’ is a confrontation in some form between union members and [persons] trying to enter the employer’s premises.” Chi. Typographical Union No. 16, 151 N.L.R.B. 1666, 1669 (1965) (quoting NLRB v. United Furniture Workers of Am., 337 F.2d 936, 940 (2d Cir. 1964)). The Board could reasonably conclude that, when union members leave signs behind in their parked cars and enter the workplace for the day, they plainly are not engaged in the sort of personal “confrontation” with passersby in the parking lot that could be considered “picketing.” See id. (finding that patrolling while carrying placards in shopping centers and public buildings lacked the “element of confrontation” necessary to constitute picketing). To be sure, picketers might occasionally • set down their signs while taking a temporary break or while sitting nearby in their cars to avoid rainfall. See, e.g., Constr. & Gen. Laborers Local 304, 260 N.L.R.B. 1311, 1316 (1982); Gen. Serv. Emps. Union Local 73, 239 N.L.R.B. 295, 302 (1978); Lawrence Typographical Union No. 570, 169 N.L.R.B. 279, 282-83 (1968); Local 182, Int’l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 135 N.L.R.B. 851, 856 & n. 6 (1962). But here, the employees left their signs entirely unattended in their cars, and they then went to work. I am unaware of any decision considering employees to be engaged in picketing even while in the workplace carrying out their normal functions.
In those circumstances, I believe the Board reasonably found the arbitration majority’s interpretation of the “picketing” prohibition to be palpably wrong. The Board may not have been compelled to reach that conclusion, and the Board perhaps also would have acted reasonably had it sustained the arbitration decision rather than overturned it. In adopting the latter course, though, the Board, in my respectful view, did not abuse its discretion.